UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BORIS DIMITROFF,

               Plaintiff,

    v.

Case No. 5:05-CV-115

Hon. Richard Alan Enslen

STATE OF MICHIGAN, MICHIGAN
FAMILY INDEPENDENCE AGENCY,
MARIANNE UDOW, MUSETTE
MICHAEL, and MICHAEL DOWNER,

               Defendants.

**OPINION**

_____/

This matter is before the Court on Defendants State of Michigan, Michigan Family Independence Agency ("FIA"),[1] Marianne Udow, Mussette Michael, and Michael Downer's Motion to Dismiss or Alternatively for Summary Judgment. Plaintiff Boris Dimitroff has responded to the Motion and the Court believes oral argument is unnecessary. W.D. MICH. LCIVR 7.2(d). For the reasons set forth below, the Court will grant Defendants' Motion.

I.      **BACKGROUND**

In July 2003, Defendant State of Michigan hired Plaintiff to serve as the director of human resources for Defendant FIA.[2] Defendants State of Michigan and FIA executed an employment

---

[1] On March 15, 2005, Defendant FIA changed its name to the Department of Human Services. Rather than use its current designation, the Court will refer to the agency as the FIA to maintain consistency with the parties' filings.

[2] The Court's recital of pertinent facts is largely drawn from Plaintiff's version of the case because Defendants' Motion principally rests on legal bases and they have not offered a materially distinguishable rendition of events. Furthermore, Defendants declined to reply to Plaintiff's Response to their Motion or otherwise rebut the factual account presented therein.

contract with Plaintiff, which provided that Plaintiff's appointment would begin July 16, 2003 and

end July 16, 2005.  The agreement also included the following term:

> **EARLY TERMINATION OF APPOINTMENT.** [The State of Michigan or its Family
> Independence Agency] may terminate my employment before it expires: (a) only for
> cause, Including [*sic*] unsatisfactory performance or (b) if you abolish the Senior
> Executive Service position.  If you do this, I have the right to file a grievance.
> However, even if my grievance is upheld, I cannot be awarded damages for any time
> beyond the expiration date of this appointment.

(Pl.'s Resp., Ex. 1).

Prior to Plaintiff's appointment, Defendant Downer served as Defendant FIA's acting

director of human resources.  Defendant Downer applied to become Defendant FIA's permanent

director of human resources but that position was awarded to Plaintiff.  After Plaintiff was hired,

Defendant Downer was reassigned as the director of personnel.  Defendant Downer now reported

to Plaintiff as his subordinate.

In the fall of 2003, the current head of Defendant FIA was removed and Defendant Michael

began serving as its acting director.[3]  On December 26, 2003, Defendants Michael and Downer met

at Defendant FIA's office in secret (there were no other employees present due to observation of the

holiday season).  At that meeting, Defendants Michael and Downer sought to improve Defendant

FIA and reorganize its existing structure.  Defendants Michael and Downer had three goals in mind:

(1) cost saving; (2) providing improved customer support; and (3) reducing worker overload.

After the meeting, Defendant Downer prepared a confidential memorandum wherein he

outlined certain changes he felt were necessary to achieve these goals.  Defendant Downer proposed

eliminating three management positions, those being: (1) human resources; (2) project/program

---

[3] Previously, Defendant Michael served as Defendant FIA's director of legal affairs.
Defendant Michael continued in this capacity, in addition to his new leadership role.

analysis; (3) and disability determination services.  Defendant Downer, however, created the confidential memorandum in a very peculiar fashion.  The memorandum was created on his home computer and Defendant Downer did not save the document to his computer's hard drive.  Instead, Defendant Downer saved the memorandum to a floppy disk, brought it Defendant FIA's office and printed just one copy for Defendant Michael's review.  Later, the confidential memorandum and the floppy disk were destroyed.  Defendant Downer stated that he has never treated a memorandum like this before in nearly thirty years of public service.

In April 2004, with approval from the Governor's office, Plaintiff's position was eliminated and Defendant FIA was reorganized.[4]  Plaintiff grieved this decision to the Michigan Civil Service Commission and alleged that his position was terminated for reasons other than administrative efficiency.  Through a Freedom of Information Act request, *see* 5 U.S.C. § 552 *et seq.*, and a subsequent state court action to enforce that request, Plaintiff learned of the surreptitious behavior surrounding the elimination of his position (*i.e.*, the December 26, 2003 meeting and Defendant Downer's confidential memorandum).  After considering the effect of destruction of the confidential memorandum upon his grievance proceeding, Plaintiff filed this lawsuit under 42 U.S.C. § 1983, and alleged that Defendants violated Article IV of the United States Constitution and his rights guaranteed by the First and Fourteenth Amendments to the same.  Specifically, Plaintiff alleged that Defendants denied him access to the courts and procedural due process.

## II.    LEGAL STANDARDS

Defendants' Motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (6), and 56.  However, Defendants have in no way suggested that this Court lacks personal

---

[4] By this time, Defendant Udow had been named director of Defendant FIA.

jurisdiction over them, and the Court will not consider Rule 12(b)(2) as a basis for dismissal. Furthermore, because Defendants have presented to the Court matters outside Plaintiff's First Amended Complaint, their Rule 12(b)(6) dismissal request will be treated as seeking summary judgment. *See* FED. R. CIV. P. 12(b). Therefore, the remaining bases for relief in Defendants' Motion are Rules 12(b)(1) and 56.

### A.    Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction is an affirmative defense that a defendant must assert in order to dismiss the action on jurisdictional grounds. FED. R. CIV. P. 12(b)(1); *See Mich. S. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n Inc*., 287 F.3d 568, 573 (6th Cir. 2002) (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)). When a defendant has made a subject matter jurisdiction challenge pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990). "Specifically, the plaintiff must show that the complaint alleges a claim under federal law," and that the "claim affords him a remedy at law." *Musson Theatrical Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1248 (6th Cir. 1996). "The plaintiff will defeat a 12(b)(1) motion to dismiss by showing any arguable basis in law for the claims set forth in the complaint." *Mich. S. R.R. Co.*, 287 F.3d at 573 (quoting *Id*.).

According to the Sixth Circuit Court of Appeals, "Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "A *facial attack* on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading." *Id.* (emphasis in original). When "reviewing such a facial attack, a trial court takes the allegations in the complaint as true." *Id.*

However, "when a court reviews a complaint under a *factual attack*, no presumptive truthfulness applies to the factual allegations." *Id.* (emphasis in original). Defendants' arguments against subject matter jurisdiction in this case are a facial attack, and therefore, the Court will review Plaintiff's Complaint in a light most favorable to Plaintiff, accept as true all of his well-plead factual allegations, and consider whether Plaintiff can prove any set of facts supporting his claims that would entitle him to relief. *Jones v. City of Lakeland, Tenn.,* 224 F.3d 518, 520 (6th Cir. 2000); *Ludwig v. Bd. of Trs. of Ferris State Univ.,* 123 F.3d 404, 408 (6th Cir. 1997).

###   B.      Summary Judgment

Deciding a motion for summary judgment requires the Court to determine if there is no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts are to be considered in a light most favorable to the non-moving party, and ". . . all justifiable inferences are to be drawn in his favor." *Schaffer v. A.O. Smith Harvestore Prod.*, 74 F.3d 722, 727 (6th Cir. 1996) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).

Once the movant satisfies his burden of demonstrating an absence of a genuine issue of material fact, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Kramer v. Bachan Aerospace Corp.*, 912 F.2d 151, 153-54 (6th Cir. 1990). The non-moving party may not rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting FED. R. CIV. P. 56(e)). It is the function of the Court to decide "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.  The question is "whether a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Id.* at 252.  "The 'mere possibility' of a factual dispute is not enough,'" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)), neither is the submission of *de minimis* evidence.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

## III.   DISCUSSION

Defendants seek dismissal or summary judgment under the following theories.  Defendants contend that: (1) the Court should abstain from exercising jurisdiction in light of Plaintiff's state grievance proceeding; (2) Plaintiff has failed to state a valid access-to-the-courts claim; (3) Plaintiff has failed to articulate a proper deprivation of due process claim; (4); Defendants FIA and Udow are immune from suit; and (5) Defendants Michael and Downer are accorded qualified immunity.  The Court will address Defendants' arguments in turn.

### A.   Abstention

In light of Plaintiff's grievance proceeding before the Michigan Civil Service Commission, Defendants invite the Court to abstain from exercising jurisdiction under the teachings of *Younger v. Harris*, 401 U.S. 37 (1971), where the Supreme Court held that federal courts are prohibited from enjoining pending state criminal prosecutions.  In subsequent decisions, the Supreme Court has expanded this concept to include quasi-judicial or administrative proceedings.  *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986); *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982).  Federal courts are forbidden from enjoining a pending state administrative proceeding when:

-6-

(1)    there is an ongoing state administrative proceeding;
(2)    which implicate important state interests; and
(3)    there an adequate opportunity in the state proceeding to raise constitutional challenges.

*Middlesex*, 457 U.S. at 432.; *Mann v. Conlin*, 22 F.3d 100, 105 (6th Cir. 1994).

Upon review, the Court believes that the principles articulated in *Younger* do not counsel abstention in this case because Plaintiff has not sought to entangle this Court in his state grievance proceeding.  The only claim for injunctive relief Plaintiff asserts is to permanently enjoin Defendants FIA and Udow "from destroying public records relating to reorganization of the agency." (Pl.'s Am. Compl., wherefore cl. A).  Were this Court to issue the injunction Plaintiff seeks, it would only work to preserve evidence necessary for Plaintiff's grievance hearing.  Plaintiff has not asked this Court to alter his grievance proceeding, comment on its constitutionality, or otherwise intrude upon matters committed to the state of Michigan.  Although mindful of notions of federalism and comity, the Court believes that the *Younger* doctrine is inapplicable in this instance.

Furthermore, the Court is not convinced there is an ongoing state administrative proceeding. According to Defendants, Plaintiff's grievance proceeding was adjourned "pending resolution of discovery issues in this case." (Defs.' Br. in Supp. at 3).  "Consequently, an essential predicate to *Younger* abstention is absent: the presence of an ongoing state prosecution." *Sw. Air Ambulance Inc. v. City of Las Cruces*, 268 F.3d 1162, 1178 (10th Cir. 2001) (citing *Walnut Props. Inc. v. City of Whittier*, 861 F.2d 1102, 1107 (9th Cir. 1988) (holding that the *Younger* doctrine is propelled by concerns of federalism and comity which are not present where a state court has stayed its own proceedings pending resolution of the case in a federal forum)).  Thus, the Court will not abstain from decision under *Younger*.

-7-

Defendants also urge the Court to abstain from decision to avoid duplicative parallel litigation in the manner contemplated by *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).  Although the *Colorado River* Court mentioned several factors that should be considered in the abstention analysis, before even considering those factors the Court must first determine whether Plaintiff's grievance proceeding and this action are in fact parallel proceedings. *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984).  After careful consideration, the Court believes they are not.

Analytically, Plaintiff's administrative grievance can be seen as seeking recovery for Defendants' wrongful termination and request for backpay compensation.  In contrast, Plaintiff's Amended Complaint in this Court seeks compensatory and punitive damages and injunctive relief for Defendants' concealment (*i.e.*, the destruction of the confidential memorandum) of the true reason underlying his termination.  Plaintiff believes these actions denied him access to the courts and procedural due process.  Or stated another way, Plaintiff's state grievance concerns whether he was properly terminated whereas his claims in this Court arise out of the constitutionality of Defendants' destruction of evidence.  These claims are separate and distinct.  Furthermore, individual Defendants Udow, Michael, and Downer are not named as parties in Plaintiff's state grievance proceeding, and nothing suggests that Plaintiff can seek redress against them in that forum. Consequently, these claims are not substantially similar and cannot be considered parallel proceedings.  Abstention under *Colorado River* is unwarranted.

**B.      Access to the Courts**

"It is beyond dispute that the right of access to the courts is a fundamental right protected by the Constitution." *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986).

"[I]f a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997).  Defendants assert that because Plaintiff still has an effective state remedy, his access-to-the-courts claim must fail.  The Court agrees.

In *Joyce v. Mavromatis*, 783 F.2d 56 (6th Cir. 1986), the Sixth Circuit Court of Appeals reviewed the plaintiff's allegations that she was injured in an automobile accident caused by the son of the local police chief and later denied access to the courts.  The plaintiff claimed that the defendants worked in concert to deny her access to the courts by "revoking a traffic citation issued to the [police chief's] son . . . in connection with the accident and by altering the police report filed by the . . . police officer who investigated the accident and by having new lines painted on the street at the intersection."  *Id.*  The court of appeals determined that the plaintiff did not state an access-to-the-courts claim because she still had the right to:

> [F]ile her damage suit and to offer proof about the accident and the alleged destruction of relevant evidence.  If she is able to prove that the Police Chief's son and his confederates undertook to destroy evidence of the son's negligence as a driver, there is no reason to believe that an Ohio court and jury would be unavailable and would not do justice between the parties.  Rather than having denied access, the defendants have opened themselves to punitive damages and converted a small claims matter into a significant case, albeit not a federal case.

*Id.*

The Court of Appeals further shaped the contours of an access-to-the-courts claim in *Swekel*. In that case the plaintiff's husband was fatally injured in an automobile accident while attempting to cross a street.  Witnesses told the investigating police officer that two cars were involved in the accident, but the second driver was not pursued as a suspect.  The plaintiff successfully pursued a wrongful death action against the first driver but claimed the police officer defendants sought to

-9-

conceal the identity of the second driver because he was the son of a high-ranking officer. *Swekel*, 119 F.3d at 1260. The plaintiff claimed the defendants' conduct denied her access to the courts.

In rejecting the defendants' argument that *Joyce* was controlling precedent and factually on all-fours, the court found that "the crucial distinction between the *Joyce* decision and this case is that the plaintiff in *Joyce* knew the identity of the defendant and had all the requisite facts to file suit." *Id.* at 1263 (citations omitted). The *Swekel* court went on to find that the plaintiff had not stated an access-to-the-court claim because there was no evidence "that the state court could not adequately address" the defendants' efforts to thwart her claim. *Id.* at 1264.

In the case at bar, there are no distinguishing features between *Joyce* and Plaintiff's ability to file his state grievance. First, Plaintiff obtained the identity of those alleged to have conspired against him before filing his grievance. Second, although a copy of the confidential memorandum has been destroyed, there is no reason to suggest that its absence necessarily spells doom for Plaintiff's grievance. More than likely the inverse will ring true because Defendants Michael and Downer will be required to testify under oath concerning its contents and the fact finder is free to draw negative inferences regarding its peculiar creation and spurious destruction. Furthermore, Defendants Michael and Downer previously testified as to the content of the confidential memorandum in Plaintiff's state court action to compel production of his FOIA requests. Finally, Plaintiff is in possession of an e-mail from Defendant Michael discussing the content of the confidential memorandum.

Plaintiff's assertions that he "cannot readily prove Defendants' intent and purpose of the sham reorganization which is crucial to his claim[,]" (Pl.'s Resp. at 16), and that his administrative claim has been destroyed is unreasonable and inconsistent with the evidence in his possession.

Plaintiff has not persuaded this Court that his state remedy has been rendered ineffective. *Swekel*, 119 F.3d at 1264. As in *Joyce*, this Court has every confidence that the Michigan Civil Service Commission will do justice to the parties and attribute appropriate weight to the alleged inequities.[5] Should Plaintiff suffer an adverse decision before the Commission, he has the right to appeal that decision to a state trial court. *See* MICH. COMP. LAWS §§ 24.301 & 24.303; *Womack Scott v. Dep't of Corr.*, 630 N.W.2d 650, 656 (Mich. App. 2001) ("If a party desires to challenge an adverse [Civil Service Commission] decision or ruling, the review process involves a direct appeal to the circuit court.").

If proven to be true, the Court is certainly alarmed by Defendants' untoward behavior and they are worthy of a severe sanction. Even so, Plaintiff has not surmounted the relatively high bar of demonstrating that their conduct rendered inadequate his state remedy, *see Boone v. Spurgess*, 385 F.3d 923, 931 n.6 (6th Cir. 2004), or persuaded this Court to deviate from the general rule that in most instances a state tribunal can adequately address attempts to thwart a cause of action. *Swekel*, 119 F.3d at 1264. Therefore, the Court will grant Defendants' Motion on this ground and award them summary judgment on Plaintiff's access-to-the-courts claim.

_____

[5] Plaintiff has also alleged that Defendants destroyed some 9,431 e-mails he believes were relevant to his grievance. For the same reason the Civil Service Commission is equipped to handle Defendants' alleged destruction of the confidential memorandum, the Commission is more than able to dispense justice in a similar fashion should Defendants' e-mail destruction be true.

Plaintiff has also glibly claimed that further discovery is needed concerning the allegedly destroyed e-mails; however, he has not moved to continue discovery nor filed a Rule 56(f) affidavit. *See* FED. R. CIV. P. 56(f). Absent such a request detailing why more discovery is needed, the Court need not stay its decision on summary judgment. *Abercrombie & Fitch Stores Inc. v. Am. Eagle Outfitters Inc.* 280 F.3d 619, 627 (6th Cir. 2002).

### C.    Due Process

The Due Process Clause of the Fourteenth Amendment "provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985).  When resolving procedural due process issues, this Court undertakes a bifurcated inquiry.  First, the Court must determine whether a protected property or liberty interest exists.  Next, the Court considers what process is due.  *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990).  Defendants concede that Plaintiff's employment contract with Defendant FIA created a legitimate expectation of continued employment through July 16, 2005. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 566 (6th Cir. 2004).  The only question remaining is whether Plaintiff can be afforded all the process he is due in his grievance hearing.

In the sphere of public employment, the Supreme Court has concluded that due process requires a pre-termination opportunity to respond to the reason given for dismissal, coupled with a post-termination administrative proceeding. *Loudermill*, 470 U.S. at 547-48.[6]  Plaintiff has not claimed that he was denied a pre-termination opportunity to respond.  Rather, Plaintiff's theory of due process liability is that because of Defendants' alleged efforts to undermine his post-termination grievance proceeding, that proceeding has now been rendered constitutionally inadequate.  In other words, Plaintiff essentially makes the same access-to-the-courts argument, this time couched as a deprivation of due process.  Because the Court has already found that Plaintiff has an adequate and

---

[6] Although *Loudermill* concerned termination of public employees with property rights in employment, whereas the case at bar involves the abolition of Plaintiff's position, the Court sees no distinguishing dimensions in that distinction.  The employment action against Plaintiff was the functional equivalent of a termination.

-12-

effective post-deprivation remedy before the Michigan Civil Service Commission, the Court believes he will afforded all the process he is due in that proceeding.  Accordingly, the Court will grant Defendants' Motion on this ground and award them summary judgment on Plaintiff's due process claim.

## IV.    CONCLUSION

Therefore, the Court will grant Defendants State of Michigan, FIA, Udow, Michael, and Downer's Motion to Dismiss or Alternatively for Summary Judgment.  A Judgment consistent with Opinion shall enter.

                                             /s/ Richard Alan Enslen
DATED in Kalamazoo, MI:             RICHARD ALAN ENSLEN
     June 12, 2006                   SENIOR UNITED STATES DISTRICT JUDGE